In our next case is Saslow v. Bankers Standard Insurance. Mr. Harris, whenever you're ready. Thank you. May it please the Court. My name is Greg Harris and I represent the Saslows. There's four main issues in this case. I'm going to try to get through two of them. I'm happy to take questions on anything else you might have. The main issue here is the stacking of the underinsured coverage in the auto policy. The history of stacking has been around for decades and what usually happens is when a case comes down that's adverse to the insurance company and allows stacking, the insurance companies usually react and adjust their policy to get rid of any deficiencies. Bankers did not do that. Bankers was not even close on this case. A short summary of stacking is very simple in how it works. The way it works is that, first, is there any reasonable interpretation of the policy and declarations page that would give an insured reason to believe that he's covered? In this case, we have it and I'll get to that in a second. Second, does the insurance company or the policy have clear and unambiguous anti-stacking language to rebut this reasonable interpretation of the policy? They don't have it here. It's that simple. Twenty-one cases were cited by both sides. Ten allowed stacking. Eleven did not. Of the eleven that did not allow stacking, there was ironclad anti-stacking language in the policy. Seven of them had language such as, you cannot stack regardless of the number of premiums, claims, vehicles, insureds, all the laundry list of reasons why you can't. There's no magic stacking language though, is there? There's no magic. That's not your argument. That's not your argument that there's magic language or magic words that the insurance company has to use. That's not the argument. In fact, of the other ones that did reject the stacking, six of them relied on this other insurance language. But in those, they had ironclad language which said, we're limiting it to the dollar amount that is the dollar amount in this specific policy, not any other insurance but this one. The ten cases that did allow stacking all neglected to have either one of those anti-stacking clauses or poor language in the other insurance clause, bankers neglected both of those. They don't have clear language under either of those conditions. When you get to the facts of this case, it's a case-by-case basis. That's what it's always been using, obviously, the other cases for precedent. In this case, whether or not the first factor of is there any reasonable interpretation of the policy and deck page that could lead an insured to believe there's coverage, there's a lot here. Policies are confusing to begin with to an insured. But in this case, they accepted multiple premiums, listed the premiums on the deck page, had multiple vehicles insured, had multiple coverage limits listed. It was in the column, by the way, the premiums and the coverage limits and the vehicles, our Supreme Court has already said, Bruder and all the cases following it, including the ones that ultimately ruled that you cannot stack, they all said that's enough to give this presumption of a reasonable interpretation. They might have denied stacking on other language, but that's enough when you have that in the deck page to have a reasonable presumption that there could be these limits. In addition to all that, it was in the column format, which we've been told many times in cases, that's confusing. The premium cost per vehicle was different for each vehicle, which leads someone to believe you're getting something different. Why? I mean, every insurance contract has that, where you're going to pay a different premium for different vehicles. There's nothing unusual about that. I wouldn't say it's unusual. It's just another- What do you make of this language? Any recovery for damages for bodily injury sustained by an injured person may equal but not exceed the higher, the applicable limit for any one vehicle under this insurance or any other insurance. Okay. What do you make of that language? Tell me how that's ambiguous. It's not ambiguous. What it is, is it opens the door, is what it does. How so? Because they don't have this anti-stacking language, prohibiting stacking with multiple  But you already said there's no magic language. Okay. So they go to the other insurance. What they do in their briefs is they want this court to totally ignore the second part of that phrase. What the phrase is that it can't exceed one, it's an either or clause, the higher of a vehicle under this insurance or, second part, other insurance. In our case, unlike a lot of the precedent cases, we actually have $3 million in other insurance. So no matter what the limit is on this case, whether it's $500,000, whether it's whatever it is, the other insurance is $3 million. We have a Berry Brothers policy, which is the truck for a million. We have the employer's policy for a million. And then we have the umbrella policy for a million. So there's $3 million in other insurance besides this policy. So I'm not saying that that's ambiguous. What I'm saying is that does not limit it to the $500,000 that they're claiming. But in their briefs, what they want you to believe is that we stop reading. We don't care about other insurance. We're just looking at the vehicle in the auto policy. And that's not correct. The Willison case is right on point with the exact language that when you're talking about any other insurance, you're talking about other insurance from other policies as well. And obviously, just be frank, when you're talking about other insurance and insurance policies, you're always talking about policies written by other insurance companies. But how do we get around Hess, Hobbs, or Kuhn? Every one of those cases, Hess, Hobbs, Kuhn, they all had the ironclad anti-stacking language which specifically addressed the facts in those cases. They all had you cannot stack regardless of the premiums. And that's in my appendix. I know it's long and I'm sure it's there to show, if you want to glance at it, that each of those cases had that exact anti-stacking language that the banker's policy does not. In some of those cases where they denied stacking, again, they went to the other insurance clause. And they said, it's just limited to this one policy. So therefore, they didn't get to any other policies. And if they did get to any other policies in those cases, the other policies, they weren't lucky enough to have $3 million in other insurance. Before you get to the other cases though, can you address Dugan? Yes. Because Dugan had this similar language and we said, no stacking. So, Dugan, four cars, four premiums. In Dugan, they had the, it was held that it was, the policy was ambiguous because of what was in the declaration page with the four cars, four premiums, et cetera. And it went to the other insurance clause. The other insurance clause said that you can only look at that policy. And in Dugan, the other insurance that actually existed outside of that policy, from the other policy, was the same limit, $100,000. And like I said, we have $3 million in other insurance that we could look at. So they didn't get a chance to do that because they didn't have that coverage. I have two minutes left. I would like to just say briefly, if stacking is allowed, that's $2.5 million in underinsured motorists and $300,000 in medical payments coverage. If it's not allowed, there is the clause in the other insurance provision that says because he was driving a rental car, the $500,000 is an excess policy. So at a minimum, the $500,000 excess policy, but we believe the stacking applies. Thank you. Okay. Thank you, Mr. Harris. Mr. Sampin. If this may please the court, excuse me, Don Sampin for the appellee here, Banker's Standard. Two points I'll make, to the extent that I have time, and of course, if you have other questions, I'll try to address those, too. One, I was going to start with the premium rule, which was kind of the foundation for the plaintiff's appeal here, and the other is the specific anti-stacking language in the banker's policy. And the plaintiffs here make what is a new argument in their reply brief, and I'll try to get to that as well. Let's start with the premium rule. The main argument that the plaintiffs make here in their version of the premium rule changes throughout the litigation. It evolves from one thing to another, but the argument they make in the reply brief was that if the anti-stacking language in the policy does not specifically mention that factor upon which the plaintiffs want to stack coverage, then stacking has to be allowed. So the magic language here is the word premium. We don't use that word premium in the anti-stacking language, and they say, well, therefore, you haven't covered all your bases, and stacking should be allowed. The problem with that argument is that there's no precedent for it. At least there's no Illinois Supreme Court precedent for it in the last 20 or 30 years, and of course, it's the Illinois Supreme Court that this court looks to for questions of state law. We cite numerous cases to demonstrate that the plaintiffs' version of the premium rule just isn't true. One is the Hobbs case. The Hobbs case is actually a consolidation of two cases, one by Hartford Insurance Company and the other by the Prudential Insurance Company. And it's the second policy at issue, the second case in the Hobbs decision that guides us in this case here. The Prudential policy covered three vehicles, the premiums were listed three times, the policy also had anti-stacking language that did not mention premiums, and yet the court did not allow stacking in that case. Now, in addition to the Hobbs case, we cite at least seven others, similar situations. Three Illinois Supreme Court cases, including Bruder, their Grzeszczak case, and Menke. Three Illinois Appellate Court decisions, Mychynski, the McElmeel, and the Willison cases, and the Seventh Circuit case in the Dugan decision, the nationwide agribusiness case. In all of these cases, there were multiple mentions of premiums in the declarations, there was no mention of premiums in the anti-stacking language, and in all the cases, no stacking was allowed. Most of these cases, not all of them, but most of them have language very similar to the banker's policy. And one of the cases I've just mentioned is the Bruder case, and the plaintiffs here place a lot of emphasis on the Bruder case. That was decided by the Illinois Supreme Court back in 1993. The decision was written by Judge Freeman, I believe, and Judge Freeman sort of went off the deep end and offered some dictum, the language to the effect that it would not be difficult to find an ambiguity in these policies under certain circumstances. And the plaintiffs make use of that dictum, and they say, well, that applies here, but the fact of the matter is in the Bruder case, Justice Freeman did not find an ambiguity, and the language he relied upon to find, to disallow stacking, did not make any mention of premiums, even though premiums were mentioned in the two policies that he was construing in that case. So the whole concept that there must be certain language in the anti-stacking language is simply false. Now, let me get to the second point that I was going to address, and that is the specific language in our policy. Judge Kirsch, you correctly identified that the one provision that I was going to discuss this morning, there are several provisions in the policy, but the one, and we set those forth on pages 11 to 12 of our brief, focused just on the last one, which is subparagraph E on page 12, and it states, as Judge Kirsch has already pointed out, that recovery could equal but not exceed the higher of the applicable limit for any one vehicle under this insurance or any other insurance, unquote. Now, I think the language is, as I think your honors have already observed, a limit for any one vehicle means that you can't add the limits to a second vehicle, but the language that the plaintiffs focus on, and again, it's a new argument they make in their reply brief. It wasn't raised down below, so I think it's been waived, but it has no validity in any event. They focus on this language under this insurance or any other insurance, and they try to construe that to mean that bankers has to pay a higher amount of money than is set forth in its policy, but that's not what this language says at all. This language prevents stacking both intra-policy as well as inter-policy. So if, for example, the uninsured motorist limit under the bankers policy is $500,000, and if that policy applies and another policy applies to the loss, that other policy has a lower limit, then bankers pays the difference between that policy and the bankers policy because the language says the insured is entitled up to but not to exceed the highest applicable limit. If the other policy that applies has a higher limit than the bankers policy, then bankers has no obligation to pay at all. It has no obligation to add on what the other policy has already paid, and that's essentially what happened in this case. The SAS loans were paid some $879,000 by the insurer of the other vehicle involved in this accident. That amount exceeded the uninsured motorist, underinsured motorist provision of the bankers policy, and the bankers obligation was zero at that point with respect to uninsured motorist coverage. It was also in excess, because it was in excess of the bankers policy, the other vehicle involved was not underinsured, and so that's another reason why bankers had no obligation to pay. At least two courts, moreover, have recognized that this language in the bankers policy is in fact anti-stacking language, and you already pointed out the Dugan case, that's one of the cases. The other case is the Willison decision from the Fourth District Appellate Court. In both cases, the anti-stacking language was almost verbatim the bankers policy language, and in both cases, the courts relied upon the insurance code and observed that the policy language in the cases, in those cases, and in the bankers policy replicated the language from the insurance code, and so therefore, prevented stacking of the policies. So those were the two points that I was going to make, I have two minutes left, I hate to ask questions, happy to address those, but if not, I'll shut up and sit down. Thank you, Mr. Hamman. Okay, Mr. Harris. Mr. Sampson, I'm sorry, I think I mispronounced that. With respect to the premiums that he brought up, that's the first level of how, it's not magic language, but they could have stopped everything if they just would have had clear anti-stacking language directed at the facts of the case as to why we're trying to stack the premium, the vehicles, and the limits. So what they do is they go to the other insurance clause, and I want to make sure I'm perfectly clear because this is a big point here, is that the other insurance clause in Dugan and in all those cases that he listed, did one of two things, which is why they prohibited stacking in those cases. Either number one, it limited it to only the insurance in that policy and did not allow any other insurance limits out there. So when you look at that policy, that's what it limited it to, and there's no stacking because it's that number. Or if it did have this language, like ours does, of any other insurance, it said, yeah, you can look at other insurance, which is what we're telling you to do or asking you to do. But what it said, when you do look at other insurance in those cases, it didn't exist. It wasn't higher. So they still said, well, you can't get any higher than this limit because there is no other insurance out there that is higher. In our case, you have to take this on a case-by-case basis. In our case, we have higher limits elsewhere. They're telling us we can look at those higher limits. The Willison case that he's citing, that was exactly what they said. The plaintiff actually argued he didn't want him to look at the other limits, and the court said, no, any other insurance, you look at other insurance. And that, in that situation, prevented him from stacking. In our situation, it doesn't. We're not saying that they need to pay this higher limit. That's just the cap of what they could pay up to if their coverage allows it. If you allow stacking of the $2.5 million because they don't have any anti-stacking language, then they can pay up to $3 million, but it would be $2.5 because that's all the coverage they have. So what we're asking for is that you give the $2.5, you give the $300 for the medical payments, and allow the stacking up to the limits of $3 million. Thank you. Thank you, Mr. Harris. The case will be taken under advisement.